**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> LAVIE WESTGATE LLC, an Ohio limited liability company, <br><br> Defendant. | Case No.: 3:23-cv-480 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendant Lavie Westgate LLC, DBA The Monster Shawarma, ("Defendant") and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for (1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; and for substantial and related claims of (3) state trademark infringement under Ohio common law; and (4) unfair competition and deceptive trade practices under the Ohio Deceptive Trade Practices Act, including Oh. Rev. Code § 4165.02(A).

2.     The Court has original subject matter jurisdiction over Monster's claims that relate to trademark infringement, trade dress infringement, and false designation of origin pursuant to 15 U.S.C. §§ 1116 and 1121(a) and pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendant because, among other reasons, Defendant has committed acts of trademark infringement, trade dress infringement, false designation of origin, and unfair competition in this judicial district, including by using infringing trademarks and trade dress in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods and services to customers in this Judicial District.  Defendant's acts form a substantial part of the transactions, occurrences, events, and/or omissions giving rise to Monster's claims.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims below took place in this Judicial District, and 28 U.S.C. § 1391(c) at least because Defendant resides in this district.

## THE PARTIES

5.      Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.      Defendant Lavie Westgate LLC is an Ohio limited liability company that owns and operates a restaurant called The Monster Shawarma, located at 3305 W. Central Ave, Toledo, Ohio 43606.

7.      "The Monster Shawarma" is a trade name that Defendant registered under the laws of the State of Ohio.

## ALLEGATIONS COMMON TO ALL CLAIMS

**A.      Monster's Trademarks and Trade Dress**

8.      Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.  Monster has achieved extensive exposure and widespread recognition of its MONSTER® brand through its sponsorship of sports, athletes and teams, among other sponsorships, and its extensive marketing and promotion of the brand.

9.      In 2002, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER® mark and MONSTER ENERGY® mark.

10.      Monster has been continuously engaged in the development, licensing, marketing, and/or sale of beverages, beverageware, restaurant services, clothing, bags, decals, and hats, as well as many other goods and services, under the marks MONSTER® and MONSTER ENERGY®, and related marks, all containing "MONSTER."  Monster's marks include, for example, the following:

MONSTER®, MONSTER ENERGY®, M MONSTER ENERGY®, MONSTER® and MONSTER®.

11. Monster is the owner of numerous valid and subsisting United States Trademark Registrations on the Principal Register in the United States Patent and Trademark Office for the goods and services set forth in the following table:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER® | 6,451,182 | "Non-alcoholic beverages, namely, soft drinks, energy drinks, sports drinks, and fruit juice drinks" in International Class 32 (first use in commerce: April 18, 2002) | December 13, 2017 | August 17, 2021 |
| MONSTER® | 6,760,278 | "Energy drinks; Fruit drinks; Soft drinks; Sports drinks" in International Class 32 (first use in commerce: April 18, 2002) | August 26, 2021 | June 14, 2022 |
| MONSTER ENERGY® | 5,114,853 | "Restaurant services; bar services" in International Class 43 (first use in commerce: October 17, 2016) | November 27, 2013 | January 3, 2017 |
| MONSTER ENERGY® | 5,114,854 | "Restaurant services; bar services" in International Class 43 (first use in commerce: October 17, 2016) | December 2, 2013 | January 3, 2017 |
| MONSTER ENERGY® | 3,044,315 | "Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 5 (first use in commerce: April 18, 2002) | May 23, 2003 | January 17, 2006 |
| MONSTER ENERGY® | 4,036,680 | "Nutritional supplements in liquid form" in International Class 5 (first use in commerce: April 18, 2002) | September 11, 2007 | October 11, 2011 |
| MONSTER ENERGY® | 4,036,681 | "Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy" in International Class 32 (first use in commerce: April 18, 2002) | September 11, 2007 | October 11, 2011 |

-3-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY® | 3,057,061 | "Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32 (first use in commerce: April 18, 2002) | April 18, 2002 | February 7, 2006 |
| M MONSTER ENERGY® | 3,044,314 | "Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 5 (first use in commerce: April 18, 2002) | May 23, 2003 | January 17, 2006 |
| M MONSTER ENERGY® | 3,134,842 | "Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32 (first use in commerce: April 18, 2002) | May 7, 2003 | August 29, 2006 |
|  | 3,134,841 | "Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not" in International Class 32 (first | May 7, 2013 | August 29, 2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | use in commerce: April 18, 2002) | | |
| MONSTER ENERGY® | 5,820,689 | *Inter alia*, "Beverageware; insulated beverage containers for domestic use; bottles, sold empty; drinking bottles for sports; water bottles sold empty; bottle openers" in International Class 21 (first use in commerce date:  January 2005) | January 15, 2019 | July 30, 2019 |
| JAVA MONSTER® | 5,689,189 | "Bar services; café services; coffee bars; mobile restaurant services; restaurant services; mobile café services for providing food and drink" in International Class 43 (first use in commerce date: March 2013 | May 8, 2018 | March 5, 2019 |
|  | 4,865,702 | "Nutritional supplements in liquid form" in International Class 5 (first use in commerce April 18, 2002) | February 2, 2015 | December 8, 2015 |

12.     Attached hereto as Exhibits 1–14 are true and correct copies of Monster's trademark registrations identified in Paragraph 11 above, which are hereby incorporated by reference.   Collectively, those registrations and trademarks, including all common rights therein, are referred to as the "MONSTER Marks."

13.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,044,315; 4,036,680; 4,036,681; 3,057,061; 3,044,314; 3,134,842; 3,134,841; and 4,865,702 are incontestable.

14.     In addition, since 2002, Monster has consistently used a distinctive trade dress for its packaging and promotional materials, including the mark MONSTER displayed in a well-recognized, unique and stylized font as shown below (the "MONSTER Trade Dress"):

-5-

# MONSTER

*See*, *e.g.*, Monster's U.S. Trademark Registration No. 6,451,182.

15.   Monster has consistently used its distinctive MONSTER Trade Dress on virtually all of its product lines, including the Monster Ultra®, Java Monster®, Juice Monster®, Rehab Monster®, Monster Dragon Tea®, and Muscle Monster® lines. Some exemplary products are shown below:

   

16.   As a result of Monster's widespread, exclusive, and continuous use of its MONSTER Marks and MONSTER Trade Dress to identify the goods and services listed in the table in Paragraph 11 above and Monster as their source, Monster owns valid and subsisting federal statutory and common law rights to the MONSTER Marks and MONSTER Trade Dress.

17.   The MONSTER family of products has achieved substantial commercial success.  Since 2002, Monster has sold more than 42 billion cans of its MONSTER line of drinks worldwide and sales of the MONSTER line of drinks have generated over $92 billion in estimated total retail revenues internationally.  In 2020 alone, Monster sold nearly 5 billion cans worldwide.  The MONSTER brand has established itself as the best-selling energy drink brand in the United States.

18.     Further, since 2002, Monster has widely used the colors green, black, and white in connection with marketing its MONSTER® brand. Some examples are shown below:








19.     MONSTER-branded drinks are sold in over 380,000 retail outlets in the United States, including convenience stores, gas stations, grocery stores, mass merchandizers (e.g., Costco, Wal-Mart, and Target), and drug stores.

20.     Monster's line of drinks is also sold by on-premises retailers such as bars, restaurants, coffees shops, sports venues, theme parks and cinemas. For example, Monster's MONSTER line of drinks have been and/or are currently sold or distributed at CKE restaurants such as Carl's Jr and Hardee's, Dunkin' Donuts, Wing Stop, Buffalo Wild Wings, Domino's Pizza, and White Castle.

21.     Monster also provides distributors and on-premise retailers with a variety of Point of Sale ("POS") materials specific to bars and restaurants.  These materials include bar mats, tip jars, mini-fridges, and bottle openers.  Monster provides distributors and on-premise retailers with cups that display one or more of the MONSTER Marks.

22.     Moreover, continually since 2003, Monster has provided restaurant and bar services at its VIP and hospitality areas in connection with its MONSTER Marks and MONSTER Trade Dress at many of the events sponsored or attended by Monster to attendees of these events.  The MONSTER Marks and MONSTER Trade Dress are displayed on the cups into which the beverages are poured, bar mats, waist aprons, bottle openers, and the actual bar itself at the VIP and hospitality areas.  Restaurant or bar services have been offered by Monster at events held in various states across the U.S. including, but not limited to, Arenacross events, NASCAR events, the MONSTER ENERGY® Cup, SXSW, the Arnold Classic, the MONSTER ENERGY® DUB Show Tour, the X Games, Supercross events, and the Warped Tour, among others.  Below are exemplary images of Monster's restaurant and bar services offered at events in connection with its MONSTER Marks and MONSTER Trade Dress:



23.    In 2016, Monster opened a restaurant, the Monster Beastro.  The Monster Beastro restaurant is located at Monster's headquarters at 1 Monster Way in Corona, California.  Monster uses its MONSTER Marks and MONSTER Trade Dress in connection with this restaurant.  Below are exemplary images of the Monster Beastro restaurant and one of Monster's food trucks, which is permanently part of the Monster Beastro:





24. The Monster Beastro restaurant is open to all Monster employees and third-party visitors. Customers can order food and beverages from the Monster Beastro restaurant either in the restaurant or online.

25. Monster's MONSTER Marks and MONSTER Trade Dress are the subject of substantial and continuous marketing and promotion by Monster. Since 2002, Monster has spent more than $9.8 billion dollars promoting and marketing its MONSTER brand. In 2019 and 2020, Monster spent over $1 billion each year in advertising, marketing, and promoting its MONSTER brand, marks, and trade dress.

26. Monster's promotional efforts also include using, licensing the use of, and displaying the MONSTER Marks and MONSTER Trade Dress on, in, or in connection with widespread distribution of promotional and point-of-sale materials; product samplings; apparel and merchandise; trucks and other vehicles; magazines and other industry publications; Monster's website, social media sites, and other Internet websites; attendance at trade shows; and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world. Since 2002, Monster has distributed millions of point-of-sale marketing items bearing its MONSTER Marks and MONSTER Trade Dress.

27. Monster also widely markets and promotes the MONSTER Marks and MONSTER Trade Dress to consumers through clothing sales and giveaways. Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its MONSTER Marks and MONSTER Trade Dress.

28. Monster has also sponsored professional fighting, including the Ultimate Fighting Championship ("UFC"); basketball; baseball; hockey; NASCAR; Road Racing World Championship Grand Prix ("MotoGP") events; the AMA Supercross Series (as the title sponsor for all 16 series races); and the X Games, among many other events. At Monster-sponsored events, the MONSTER Marks and MONSTER Trade Dress are prominently promoted at the

venues, including on banners and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

29. In addition, Monster sponsors hundreds of athletes or athletic teams that compete in a wide variety of sports, including motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, and various classes of NASCAR racing. When Monster sponsors an athlete, both sides agree that the athlete's clothing, gear, and equipment will display the Monster brand. Many of the events in which the Monster-sponsored athletes and athletic teams compete are broadcast nationally on television, and the broadcasts display the MONSTER Marks and MONSTER Trade Dress.

30. The MONSTER Marks and MONSTER Trade Dress also receive extensive publicity and exposure through Monster's websites, such as www.monsterenergy.com, and social media sites, including Monster's Facebook, Twitter, Instagram, TikTok, and YouTube accounts. As of February 2023, Monster's Facebook page has over 25.4 million "likes"; Monster's Twitter page has approximately 3 million followers; Monster's Instagram page has approximately 8.2 million followers; Monster's TikTok page has over 2.2 million followers and over 18.5 million likes; and Monster's YouTube page has over 3.11 million subscribers and more than 561 million page views. MONSTER Marks and MONSTER Trade Dress are displayed on these websites and social media sites.

31. The MONSTER Marks and MONSTER Trade Dress have also received significant unsolicited coverage in various national publications. For example, they have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes*, and *Business Week*, among other publications.

32.     The MONSTER Marks and MONSTER Trade Dress have acquired great value as specific identifiers of Monster's products that serve to identify and distinguish Monster's products from those of others.  Monster has obtained strong common law rights in the MONSTER Marks and MONSTER Trade Dress, which are not only inherently distinctive but have also acquired secondary meaning. Customers in this judicial district and elsewhere readily recognize MONSTER Marks and MONSTER Trade Dress as distinctive designations of the origin of Monster's drinks, restaurant services, beverageware, hats, clothing, bags, sporting equipment, accessories, promotional items, and numerous other products and services.  The MONSTER Marks and MONSTER Trade Dress are intellectual property assets of enormous value as symbols of Monster and its quality, reputation, and goodwill.

33.     Monster has consistently and successfully enforced and protected its MONSTER Marks and MONSTER Trade Dress against past infringements.

**B.     Defendant's Unlawful Activities**

34.     Upon information and belief, Defendant operates a restaurant called The Monster Shawarma.   Defendant also owns and operates the website https://monstershawarmatoledo.com/, where it advertises its restaurant to consumers, including customers in this Judicial District.   Defendant also maintains the Facebook account https://www.facebook.com/people/The-Monster-Shawarma/100063466355486/.

35.     Without permission or consent from Monster, Defendant has sold and is offering for sale goods and services using trademarks and trade dress that are confusingly similar to one or more of the MONSTER Marks and the MONSTER Trade Dress.  Beginning long after Monster acquired protectable exclusive rights in the MONSTER Marks and MONSTER Trade Dress, Defendant adopted and began using the mark THE MONSTER SHAWARMA

-14-

and stylized version of the same, including,  (the "Infringing Marks") in connection with the promotion of its restaurant and sale of its food and beverages in U.S. commerce.  Examples of Defendant's use of the Infringing Marks and associated infringing trade dress (the "Infringing Trade Dress") are shown below:



36.     As shown above, Defendant is using the identical mark MONSTER and is also displaying the mark in a font that is nearly identical to the distinctive font used by and associated with Monster.  A comparison is shown below:

Monster                                      Defendant

                

37.     In addition, Defendant predominantly uses the word MONSTER in the Infringing Marks in a white stylized font, which is the same color that Monster has used for its MONSTER mark on its flagship original MONSTER ENERGY drink and widely used in its marketing and promotional materials since 2002. Defendant is also using the Infringing Marks in connection with the colors green and black, which are colors Monster has also widely and prominently used since 2002. Defendant's Infringing Marks create a strikingly similar commercial impression to that of the MONSTER Marks and MONSTER Trade Dress. Upon information and belief, Defendant offers and sells its restaurant services, food, and beverages to the general public. Monster similarly markets its goods and services to the general public.

38.     Upon information and belief, Defendant had actual knowledge of Monster, the MONSTER Marks, and MONSTER Trade Dress when Defendant commenced its infringing activities, due to Monster's decades-long, widespread, and continuous use of the MONSTER Marks and MONSTER Trade Dress in commerce and the presence of Monster's U.S. Trademark Registrations on the Principal Register.

39.     Defendant has been aware of Monster, the MONSTER Marks, and MONSTER Trade Dress since at least as early as December 8, 2022, when Monster sent a cease and desist letter to Defendant regarding its infringement. Monster sent a follow-up letter to Defendant on January 12, 2023. Defendant did not respond to either letter, and has continued its infringement thereafter unabated.

40.    Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's goods and services and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's restaurant services, food, and beverages originate from, or are associated or affiliated with, or otherwise authorized by Monster.

41.    Upon information and belief, Defendant's acts are willful and conducted with the deliberate intent to trade on the goodwill of Monster's MONSTER Marks and MONSTER Trade Dress and cause confusion and deception in the marketplace.

42.    Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Monster and to its valuable reputation and goodwill with the consuming public for which Monster has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

43.    Monster repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

44.    As a result of the widespread use and promotion of Monster's MONSTER Marks and MONSTER Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential consumers, in that consumers and potential consumers have come to associate the MONSTER Marks and MONSTER Trade Dress with Monster.

45.    Defendant's unauthorized use in commerce of the Infringing Marks and Infringing Trade Dress as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendant's

-17-

goods and services are sold, authorized, endorsed, or sponsored by Monster, or that Defendant are in some way affiliated or sponsored by Monster.

46.     Defendant's conduct as alleged herein constitutes false designation of origin, trade dress infringement, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Upon information and belief, Defendant had actual knowledge of Monster's prior ownership and prior use of the MONSTER Marks and MONSTER Trade Dress.  Defendant's conduct as alleged herein is willful, and is intended and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Monster.

48.     Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Monster, and to its goodwill and reputation, and will continue to both damage Monster and confuse the public unless enjoined by this Court.  Monster has no adequate remedy at law.

49.     Monster is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

50.      Monster repeats and realleges paragraphs 1 through 49 hereof, as if fully set forth herein.

51.     Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks, including at least the registrations listed in Paragraph 11 above.

52.     Defendant has used in commerce, without permission from Monster, the Infringing Marks that are colorable imitations of and/or confusingly similar

-18-

to the MONSTER Marks, in connection with the advertising, marketing, promoting, and/or sale of Defendant's goods and services, including its restaurant.

53.     Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to cause confusion or mistake, or to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods and services are sold, authorized, endorsed, or sponsored by Monster, or that Defendant is in some way affiliated with or sponsored by Monster.  Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.     Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Monster's prior rights in the MONSTER Marks and with the willful intent to cause confusion and trade on Monster's considerable goodwill.

55.     Defendant's conduct is causing immediate and irreparable harm and injury to Monster, and to its goodwill and reputation and will continue to both damage Monster and confuse the public unless enjoined by this Court.  Monster has no adequate remedy at law.

56.     Monster is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### THIRD CLAIM FOR RELIEF

### (Trademark Infringement Under Common Law)

57.     Monster repeats and realleges paragraphs 1 through 56 hereof, as if fully set forth herein.

58.     Defendant has used in commerce, in connection with the advertising, marketing, promoting, and/or sale of at least the infringing goods and services, the Infringing Marks that are colorable imitations of and/or confusingly similar to Monster's MONSTER trademarks.   Such use is without permission from Monster and is likely to cause consumer confusion, mistake, or deception.

59.     The activities of Defendant complained of herein constitute willful and intentional infringement of Monster's trademarks.  Defendant's infringement was done with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among consumers, and to deceive the public into believing that Defendant's goods and services are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

60.     Upon information and belief, Defendant has actual knowledge of Monster's ownership and prior use of the MONSTER trademark.

61.     Defendant, by its aforementioned actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Monster's common law trademark rights, for which Monster has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Unfair Competition and Deceptive Trade Practices based on State Law)

62.     Monster repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

63.     Defendant has engaged and continues to engage in knowing trademark infringement and related deceptive advertising and promotion using the Infringing Marks in fraudulent and deceptive acts and practices in violation of the Ohio Deceptive Trade Practices Act, including Oh. Rev. Code 4165.02(A).

64.     Defendant has used and is using the Infringing Marks which are confusingly similar to Monster's MONSTER Marks in connection with identical services and goods for which Monster uses its marks. Therefore, Defendant's uses

of the Infringing Marks misrepresent the source, sponsorship, approval or certification of its services.

65.     Defendant's uses of the Infringing Marks are likely to cause consumers to conclude falsely that there exists some affiliation, connection or association between Defendant and Monster. Defendant's uses of the Infringing Marks constitute a false representation that Defendant's services and goods are, in fact, offered by Monster, or are otherwise affiliated with Monster.

66.     The actual and probable tendency and impact of Defendant's uses is to enable Defendant to deceive the public, including citizens of the State of Ohio for whose protection Oh. Rev. Code 4165.02(A) was enacted.

67.     Defendant's wrongful conduct constitutes unfair competition as prohibited by Oh. Rev. Code 4165.02(A).

68.     Moreover, at all times relevant to this Complaint, Defendant has had actual or constructive knowledge of Monster's rights to its Marks and therefore Defendant's infringement was willful and deliberate.

69.      Defendant acted with actual malice and a conscious disregard for the rights of Monster.

70.      The actions or omissions of Defendant demonstrate malice, or Defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Monster prays for judgment against Defendant as follows:

A.     That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

B.     That the Court render a final judgment that Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) by willfully infringing the MONSTER Marks and violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) by willfully infringing the MONSTER Marks and MONSTER Trade

-21-

Dress by using a false designation of origin, through the marketing, sale, and promotion of Defendant's products and/or services;

C.     That the Court render a final judgment that Defendant has violated the provisions of Oh. Rev. Code § 4165.02(A);

D.     That the Court render a final judgment that Defendant has violated Ohio common law by unfairly competing with Monster;

E.     That Defendant, its agents, servants, employees, attorneys, successors, affiliates, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

    a.     using the Infringing Marks and Infringing Trade Dress in connection with the advertising, promotion, or sale of Defendant's products and/or services, using any of the MONSTER Marks or MONSTER Trade Dress in connection with Defendant's products and/or services, using any of the MONSTER Marks or MONSTER Trade Dress in adveristing or promoting Defendant's products and/or services, and/or using confusingly similar variations of any of the MONSTER Marks or MONSTER Trade Dress in any manner that is likely to create the impression that Defendant's products and/or services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

    b.     manufacturing, distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise, or promote any unauthorized products bearing any of the MONSTER Marks or MONSTER Trade Dress, and/or any confusingly similar marks or trade dress;

c. otherwise infringing on any of the MONSTER Marks or the MONSTER Trade Dress;

d. engaging in any activity that constitutes unfair competition with Monster;

e. falsely designating the origin of Defendant's products and/or services;

f. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's products and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Monster or (ii) Monster's goods and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

g. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Monster or tend to do so;

h. filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress; and

i. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h).

F. That Defendant be directed to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all menus, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any

-23-

designation or mark incorporating any of the Infringing Marks or Infringing Trade Dress, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the MONSTER Marks and/or the MONSTER Trade Dress, and to direct all other individuals or entities wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods and/or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing any of the Infringing Marks or Infringing Trade Dress, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the MONSTER Marks and/or MONSTER Trade Dress, and to immediately remove them from public access and view;

G. That Defendant be directed to cancel with prejudice any and all of its registrations, including trade name registrations, for the Infringing Marks or Infringing Trade Dress, or any mark consisting of, incorporating, or containing the MONSTER Marks, MONSTER Trade Dress, or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark or tradename registry;

H. That Defendant be directed, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), to file with the court and serve upon Monster's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant complied with the injunction in this action;

I. That Monster be awarded an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

-24-

J.     That Defendant be directed to account to and pay over to Monster all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Monster for the damages caused thereby;

K.     That the Court declare this an exceptional case pursuant to Section 35(a) of the Lanham Act and award Monster its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

L.     That Monster be awarded interest, including prejudgment and post-judgment interest, on the foregoing sums;

M.     That Monster be awarded exemplary damages from Defendant;

N.     That Monster be awarded punitive damages from Defendant, including without limitation reasonable attorney fees;

O.     That Defendant be directed to deliver and destroy all unauthorized material bearing any of the Infringing Marks or Infringing Trade Dress, or any of the MONSTER Marks or MONSTER Trade Dress, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118; and

P.     That Monster be awarded such other and further relief as the Court deems just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

-25-

Respectfully submitted,

Dated: March 9, 2023        By: */s/*

James A. Tate (Ohio Bar. No. 0085319)
HELMER, MARTINS, TATE &
    GARRETT CO. LPA
1745 Madison Rd.
Cincinnati, Ohio 45206
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
Email: jtate@fcalawfirm.com

Steven J. Nataupsky (CA Bar No. 155913)
    *Pro hac vice to be filed*
steven.nataupsky@knobbe.com
Lynda Zadra-Symes (CA Bar No. 156511)
    *Pro hac vice to be filed*
lynda.zadrasymes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Hans L. Mayer (CA Bar No. 291998)
    *Pro hac vice to be filed*
hans.mayer@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (949) 760-9502

*Attorneys for Plaintiff,*
*MONSTER ENERGY COMPANY*